J-A01007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WALTER STANLEY REISS | : | |
| | : | |
| Appellant | : | No. 446 EDA 2022 |

Appeal from the PCRA Order Entered December 13, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0001288-2018

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JANUARY 24, 2023**

Walter Stanley Reiss (Appellant) appeals from the order entered in the Northampton County Court of Common Pleas, denying his first, timely Post Conviction Relief Act[1] (PCRA) petition. Appellant seeks relief from the judgment of sentence imposed following his jury convictions of two counts of arson.[2] On appeal, he first claims the trial court erred in denying his request for funds to retain a defense expert for trial, and that direct appeal counsel was ineffective for not perfecting a direct appeal. We determine these two issues are waived. Appellant also avers the PCRA court erred in denying relief

_____

[1] 42 Pa.C.S. §§ 9541-9545.

[2] 18 Pa.C.S. § 3301(a)(1)(i) (recklessly placing firefighter in danger of death or bodily injury), (c)(3) (collecting insurance).

on his allegations trial counsel was ineffective for: (1) not requesting trial continuance in order to review missing discovery; (2) not presenting evidence of his financial situation, to rebut the Commonwealth's theory that Appellant had a financial motive to start the fire; (3) not presenting pre-fire photographs depicting renovations to the property; and (4) not objecting to testimony that was impermissible for a lay witness. We affirm.

## I.  Facts & Jury Trial

The PCRA court summarized the underlying facts as follows:  Appellant purchased "an older home" at 942 East Macada Road, Bethlehem, Northampton County.  PCRA Ct. Op., 12/13/21, at 3.  Appellant intended to perform, himself, extensive renovations, including "gutting the entire home, relocating the bathroom and plumbing, re-wiring the home, [and] replacing the plaster walls[,] ceilings, and . . . much of the flooring." *Id.*  Appellant, his wife, and their young child lived in an apartment during the renovations. *Id.*

In the early morning hours of May 28, 2015, the Bethlehem Police Department and Bethlehem Fire Department responded to a fire at Appellant's property.

> When the police and fire department arrived, [Appellant] was the only person on the scene.  [He was] in the . . . side yard[,] spraying the exterior wall with a garden hose.  [Appellant's] efforts were futile as the entire home was engulfed in flames, [and] flames could be seen coming out of the roof.  [Firefighters went] inside the home to battle the fire.  However, their actions were also futile.  The home was completely destroyed by the fire.

*  *  *

On the evening of the fire, [Appellant] told the police that he was the only person at the home. [Appellant] testified that he often remained at the home overnight, because of his devotion to the renovations. During the early morning hours, as [Appellant] watched television on a couch in the home's first floor, [he] allegedly noticed the television flicker and believed [there was] an electrical interruption. In response, [Appellant] claimed[,] he exited the home to inspect the electrical transmission lines which were located behind his garage.

[Appellant] testified that he walked away from the home for only minutes, [and] he came back to find it engulfed in flames. In response, he called 911 and attempted to put out the fire with a garden hose.

By November 1, 2017, law enforcement filed the criminal charges [of two counts of arson] after having received several reports from fire investigators which concluded that the fire was set by human hand.

PCRA Ct. Op. at 3-4.

This case was initially assigned to the Honorable President Judge Michael Koury. The trial court conducted a hearing on August 24, 2018 — 11 days before trial — to address defense pre-trial motions, including Appellant's petition for *in forma pauperis* status so that the court would pay the $3,500 fee for a defense expert witness. **See** N.T., 8/24/18, at 5, 20. Appellant's attorney, Christopher Koschier, Esquire (Trial Counsel), was privately retained, but he argued Appellant had expended his resources in defending against the charges. **Id.** at 5. Appellant testified he previously worked as an expert witness, in the field of amusement park accidents,[3] but his employment

---

[3] **See** N.T. Trial Vol. II, 9/5/18, at 180.

"has been pretty much eliminated" because of his criminal charges, and instead he was selling and buying items on eBay for profit.[4] *See id.* at 11, 18. The trial court denied this motion. *Id.* at 21.

At this same hearing, the trial court also considered a defense discovery motion. Bethlehem Deputy Fire Chief Craig Baer testified he had with him his own files pertaining to this case, which had not been requested by nor given to either party. N.T., 8/24/18, at 26-27. The court suggested the case could be continued for several months, but after consultation with Appellant, Trial Counsel stated they wished to proceed to trial as scheduled. *Id.* at 31, 33.

Five days later, on August 29, 2018, this case was reassigned to the Honorable Stephen Baratta, and trial commenced six days thereafter, on September 4th. *See* PCRA Ct. Op. at 2. Over the three-day jury trial, the Commonwealth presented three expert witnesses: Deputy Fire Chief Baer; a certified fire inspector; and a forensic electrical engineer and certified fire and explosion inspector.[5] The PCRA court summarized:

> Deputy Chief Baer testified [that] his department vigorously fought the fire[.] In doing so, he opined[,] his firefighters were at risk of life. Fortunately, none were injured. In addition, he testified the fire's origins were suspicious prompting an investigation concerning potential arson.

---

[4] Appellant also stated he "can't leave [his] home without being on camera[,]" as he was "afraid of being targeted." N.T., 8/24/18, at 18-19.

[5] *See* N.T. Trial Vol. II, 9/5/18, at 76, 78-79.

Arson was suspected for multiple reasons. First, the investigation found no evidence of an electrical origin. Second, the second and third floors/ceilings [were] cut [a]way against a side wall[,] creating a chimney-like route for the flames to quickly race [up] the three story home . . . to the exposed roof joists. Third, at the base of the hole on the first floor, [Appellant] had piled and stored flammable materials including discarded wood and mattresses.

Fourth, the portion of the floor on the first floor, where the flammable materials were stored, was completely burned away, indicating to the investigators that the missing (burned up) floor area was the origin of the fire. The investigators reasoned that given the burn patterns, the fire burned in an upward trajectory consuming the rest of the house and, with the exception of the point of origin, the rest of the wooden flooring on the first floor remained intact and was unconsumed by the fire.

Fifth, near the point of origin, the inspectors found a 5 gallon "Jerry can" of gasoline that was . . . about half full.[6] The can had no cap[.] Further, the can's burn pattern indicated that the can was half full throughout the fire. There was much testimony about the missing gas cap and the fact that the can of gasoline, located close to the point of origin and in the center of a massive fire, did not ignite during the fire. The experts also testified that if a flammable liquid had been applied to the materials at the point of origin, it could not have been detectable because the floor and other flammable materials were completely consumed by the fire. Thus, the experts testified that they did not and could not test for the presence of flammable liquids at the point of origin.

The Commonwealth also presented evidence that [Appellant] had a financial motive to burn down his home to collect insurance proceeds.

The Commonwealth's witnesses were cross-examined by [Appellant's] trial counsel. Trial [C]ounsel's theory was the cause of the fire was either an electrical short or other defect associated with an electrical socket . . . on the wall several feet away from

---

[6] At the PCRA hearing, Appellant's expert witness explained that a jerry can is a five-gallon steel can, commonly used to store gasoline. N.T., 8/9/21, at 14.

the alleged point of origin[,] or a window air conditioner that was . . . plugged into that socket. [Trial C]ounsel also argued that the presence of . . . combustible materials . . . at the point of origin under the ceiling holes[ ] was an innocent by-product of the renovation. This alternate theory was vigorously argued through cross-examination with the experts and in . . . closing argument.

PCRA Ct. Op. at 5-7 (paragraph breaks added).

Appellant testified in his own defense, denying that he started the fire. "Most of his cross-examination involved his renovation work and financial status." PCRA Ct. Op. at 7.

The jury found Appellant guilty of both counts of arson — risking the life of a firefighter and collecting insurance proceeds. On October 19, 2018, the trial court imposed an aggregate sentence of 33 to 72 months' imprisonment. The court also imposed restitution as follows: (1) $172,046.17 to Appellant's insurance company, State Farm; and (2) $13,761.25 to the Bethlehem Fire Department.

Following a series of attorneys' withdrawals and appointments, Appellant filed a timely post-sentence motion while represented by privately retained counsel, Gerald Stein, Esquire. *See* PCRA Ct. Op. at 8-9.

## II. Direct Appeal

We review the ensuing, protracted procedural history in chronological order. Attorney Stein filed a premature notice of appeal, before the post-sentence motion was ruled on. *See* Pa.R.Crim.P. 720, *cmt.* ("No direct appeal may be taken by a defendant while his or her post-sentence motion is pending."). On March 11, 2020, this Court quashed the appeal.

- 6 -

***Commonwealth v. Reiss***, 856 EDA 2019 (unpub. memo.) (Pa. Super. Mar. 11, 2020), *appeal discontinued*, 197 MT 2020 (Pa. Sept. 28, 2020). Next, on April 27th, Appellant filed a counseled **untimely** petition for allowance of appeal with our Supreme Court.[7]

On June 3, 2020, the trial court entered a final order dismissing the outstanding post-sentence motion. Meanwhile, Attorney Stein withdrew his appearance, and the trial court appointed Tyree Blair, Esquire, to represent Appellant. On August 17, 2020, the trial court conducted a hearing to determine how Appellant wished to proceed. The court informed Appellant it could reinstate his direct appeal rights, but following a colloquy, Appellant stated he wished to "waive" his direct appeal rights and instead file a PCRA petition. PCRA Ct. Op. at 7-9. On August 19th, the trial court issued an order memorializing Appellant's decision. We note that throughout this time, the petition for allowance of appeal remained pending before our Supreme Court.

### III. PCRA Proceedings

On September 23, 2020, Appellant filed a counseled PCRA petition, which: (1) challenged the trial court's denial of funds for a defense expert; and (2) raised 13 separate claims of Trial Counsel's ineffective assistance.

---

[7] The 30-day period for Appellant's filing of a petition for allowance of appeal ended on April 10, 2020. ***See*** Pa.R.A.P. 1113(a).

Five days **later**, on September 28th, Appellant filed a counseled praecipe with our Supreme Court to discontinue his petition for allowance of appeal.

The PCRA court conducted evidentiary hearings on August 9 and 24, 2021.[8] Appellant and Trial Counsel testified. Appellant also called an expert in arson investigation, John Lentini, whom Appellant had previously desired to retain as an expert witness for trial. Mr. Lentini testified as to his opinion why three of the Commonwealth's experts' theories were wrong, but, as the PCRA court points out, he did not offer his own opinion as to the cause or point of origin of the fire. *See* N.T., 8/9/21, at 10; PCRA Ct. Op. at 14.

The PCRA court denied Appellant's PCRA petition on December 13, 2021. On December 23rd, Appellant filed a counseled motion for reconsideration, which the court did not rule upon. The 30-day period to file a notice of appeal ended on Wednesday, January 12, 2021. *See* Pa.R.A.P. 903(a).

Thereafter, on January 20, 2021, Appellant filed a counseled application to reinstate his appeal rights *nunc pro tunc*. Appellant's PCRA attorneys acknowledged they mistakenly believed the motion for reconsideration would toll Appellant's appeal time, and argued "[t]his mistake should not be attributed to [Appellant] and he was not correctly advised of his appeal rights." Appellant's Application to Reinstate PCRA Appellate Rights *Nunc Pro Tunc*,

---

[8] At the PCRA hearings, Appellant was represented by Rory Driscole, Esquire, and John Waldron, Esquire. On appeal, he is currently represented by Michael Diamondstein, Esquire.

1/20/21, at 1. The PCRA court permitted Appellant to appeal,[9] and he complied with the subsequent order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[10]

## IV. Timeliness of Appellant's PCRA Petition

Preliminarily, we review the timeliness of Appellant's September 23, 2020, PCRA petition.[11] **See Hipps**, 274 A.3d at 1267 ("The PCRA time

---

[9] A petition to reinstate an appeal, from the denial of a PCRA petition, shall be reviewed as a subsequent PCRA petition and is subject to the PCRA's timeliness requirements. **See Commonwealth v. Robinson**, 837 A.2d 1157, 1163 (Pa. 2003). Here, Appellant's application to reinstate his PCRA appeal rights did not invoke any of the timeliness exceptions. **See** 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Nevertheless, we note the application was promptly filed eight days after his 30-day appeal period ended, and the application averred the Commonwealth did not object to the requested relief.

The Pennsylvania Courts have held counsel's "errors and omissions which preclude a petitioner from obtaining meaningful PCRA merits review constitute ineffective assistance of counsel *per se*[,]" and such *per se* ineffectiveness "can, in certain circumstances, satisfy the timeliness exception of section 9545(b)(1)(ii)." **Commonwealth v. Hipps**, 274 A.3d 1263, 1268 (Pa. Super. 2022), *appeal denied*, 2022 WL 17423236 (Pa. 2022). Under the circumstances presented, we conclude the PCRA court properly granted Appellant's application to reinstate his PCRA appeal rights *nunc pro tunc*.

[10] Subsequently, Appellant's PCRA counsel, Attorneys Driscole and Waldron, filed an application with this Court to withdraw from representation, which was granted on April 25, 2022. Consistent with this Court's order, the PCRA court conducted a hearing on May 12th and appointed Brian Monahan, Esquire, to represent Appellant. However, present, privately-retained counsel, Attorney Diamondstein, entered his appearance with this Court on June 23rd, and Attorney Monahan was permitted to withdraw.

[11] Although Appellant did not include the timeliness of the PCRA petition in his statement of questions involved, he addresses it as the first issue in his argument section. **See** Appellant's Brief at 7-8, 13-14.

limitations implicate our jurisdiction[.]").  On May 17, 2022, this Court issued a *per curiam* rule to show cause to Appellant, observing the PCRA petition was filed while his petition for allowance of appeal was still pending in the Pennsylvania Supreme Court.  ***See Commonwealth v. Leslie***, 757 A.2d 984, 985 (Pa. Super. 2000) ("A PCRA petition may only be filed after an appellant has waived or exhausted his direct appeal rights.").

In his response, Appellant advanced various equity arguments why this Court should overlook the "de minimis" five-day period between Attorney Blair's filing of the PCRA petition and subsequent withdrawal of the petition for allowance of appeal.  Meanwhile, we note, the PCRA court has opined Appellant's judgment of sentence became final when this Court quashed his direct appeal, PCRA Ct. Op. at 17, and, alternatively, that the PCRA's one-year filing deadline began to run when Appellant withdrew his direct appeal.  Order, 8/19/20.  We conclude the PCRA petition was timely filed on different grounds. ***See Commonwealth v. Reed***, 107 A.3d 137, 140 (Pa. Super. 2014) (citation omitted) ("This Court may affirm a PCRA court's decision on any grounds if the record supports it.").

The PCRA's jurisdictional time "limitations are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits."  ***Reed***, 107 A.3d at 140 (citation omitted). The PCRA provides that generally, a petition "shall be filed within one year of the date the judgment becomes final[.]"  42 Pa.C.S. § 9545(b)(1).  "[A]

judgment becomes final at the conclusion of direct review, including discretionary review in . . . the Supreme Court of Pennsylvania, **or** at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3) (emphasis added).

As stated above, following this Court's quashal of Appellant's attempted direct appeal, the trial court entered an order on June 3, 2020, dismissing the outstanding post-sentence motion. At that time, Appellant could have taken a direct appeal but, as stated above, he elected not to. Pursuant to Section 9545(b)(3), we conclude Appellant's judgment of sentence became final at the expiration of the 30-day appeal period following the June 3rd denial of his post-sentence motion — July 3rd. **See** 42 Pa.C.S. § 9545(b)(3). Appellant then had one year, or until July 3, 2021, to file a PCRA petition. **See** 42 Pa.C.S. § 9545(b)(1). We thus conclude the September 23, 2020, PCRA petition was timely filed, and the PCRA court had jurisdiction to review its merits. **See Hipps**, 274 A.3d at 1267.

## V. Statement of Questions Involved

Appellant presents seven issues for our review:

1. The PCRA Court erred when it did not find that the trial court erred when it denied [Appellant's] requests for funds to hire an expert witness in fire investigation.

2. The PCRA court erred by not finding appellate counsel was ineffective for failing to perfect the direct appeal.

3. The PCRA Court erred in finding that counsel was not ineffective for failing to obtain a continuance of the trial date as evidence supports that trial counsel was unprepared.

- 11 -

4. The PCRA Court erred by finding that trial counsel was not ineffective for failing to introduce evidence to refute the Commonwealth's theory for motive as it pertained to [Appellant's] financial status.

5. The PCRA Court erred by making a determination in its December 13, 2021 opinion which inaccurately purports that PCRA counsel did not introduce evidence of [Appellant's] financial status which would undermine the Commonwealth's motive for the arson, a finding which is clearly not supported by the record.

6. The PCRA court erred in finding that trial counsel was not ineffective for failing to obtain and introduce pictures of the progression of the home renovation, which would have refuted the theory set forth by the Commonwealth that the holes were cut into the ceiling to intentionally create a chimney effect, thereby allowing the fire to spread. . . .

7. The PCRA Court erred in concluding that counsel was not ineffective for failing to rebut the testimony of Detective Beebe.

Appellant's Brief at 7-8.[12]

## VI. Standard of Review & Law for Ineffective Assistance Claims

At this juncture, we note the relevant standard of review:

In reviewing the grant or denial of PCRA relief, an appellate court considers whether the PCRA court's conclusions are supported by the record and free of legal error. . . . A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. . . .

**Commonwealth v. Flor**, 259 A.3d 891, 910 (Pa. 2021) (citations & quotation marks omitted).

---

[12] We have reordered Appellant's issues for ease of discussion.

Our Supreme Court has explained:

To prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements[:] (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

With regard to the second, reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued."

To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1127-28 (Pa. 2011) (citations omitted & paragraph breaks added). "A failure to satisfy any of the three prongs of [the above] test requires rejection of a claim of ineffective assistance of trial counsel[.]" *Id.* at 1128 (citation omitted).

## VII. Trial Court's Denial of Funds for Defense Expert

In his first issue, Appellant avers the PCRA court erred in denying relief on his claim that the trial court should have granted his pre-trial request for funds to retain an expert witness.[13] Appellant's Brief at 14, 16. Appellant

---

[13] Appellant does not raise a claim that Trial Counsel was ineffective for not retaining an expert witness.

contends that if his proposed expert, John Lentini, had testified at trial, he could have undermined the opinions of the Commonwealth's three experts. *Id.* at 17-18. Specifically, Lentini would have testified: "the air conditioning was erroneously ruled out as a cause of the fire[;] much of the logic supporting the [Commonwealth's] investigator's conclusions was faulty[,]" and the plastic cap, on the gasoline can, was likely consumed during the fire. *Id.* at 18. Appellant concludes his due process rights were violated because "his ability to defend himself at trial was severely compromised." *Id.* at 21. We conclude this issue is waived.

To be eligible for PCRA relief, a petitioner must establish his allegations have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b). Appellant's present claim is one of trial court error. He could have raised it on direct appeal, but he elected to forego his direct appeal rights. Accordingly, the issue is waived for PCRA review. *See* 42 Pa.C.S. § 9543(a)(3).

## VIII. Direct Appeal Counsel's Alleged Ineffectiveness for Not Perfecting a Direct Appeal

In his second issue, Appellant avers Attorney Stein was ineffective for failing to perfect a direct appeal, where Appellant had initially requested him to do so. *See* Appellant's Brief at 40-41. Appellant recounts that Attorney

Stein filed a premature notice of appeal, as his post-sentence motion was still pending. Appellant acknowledges the PCRA court's reasoning that because he was in fact provided the opportunity to file a *nunc pro tunc* direct appeal, this issue is waived. Appellant nevertheless contends this conduct by counsel "illustrate[s] the smorgasbord of poor lawyering to which he was subjected." *Id.* at 40 n.12. We agree this issue is waived.

As stated above, the trial court held a hearing especially to determine how Appellant wished to proceed following this Court's quashal of his direct appeal. The court advised Appellant it could reinstate his direct appeal rights, but Appellant, represented by counsel and having been colloquied, asserted his desire to forego a direct appeal. N.T., 8/17/20, at 4, 7-8. Presently on appeal, Appellant advances no argument that he misunderstood or that at any time he informed his counsel that he changed his mind. Furthermore, as the PCRA court points out — and Appellant does not dispute — no record was made at the PCRA hearing regarding Attorney Stein's alleged ineffectiveness. *See* PCRA Ct. Op. at 44. Accordingly, this issue is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). We now turn to Appellant's multiple allegations of Trial Counsel's ineffectiveness.

## IX. Trial Counsel's Alleged Ineffectiveness for Not Continuing Trial

Next, Appellant asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not accepting the trial court's offer

of a continuance.  Appellant's Brief at 23.  By way of background, we summarize the following:  at the August 24, 2018, pre-trial hearing, Deputy Fire Chief Baer stated he had not been requested to provide, and had not provided, the entirety of his own files to the Commonwealth or defense.  N.T., 8/24/18, at 26-27.  These files, comprised of "thousands" of pages, included his own "origin and cause report" and State Farm's "complete investigative packet."  ***Id.***  Trial Counsel argued the Commonwealth should have learned of these files "through reasonable investigation" and provided them in discovery.  ***Id.*** at 29-30.

The trial court suggested the case could be continued to February 2019, so that the parties could exchange outstanding discovery, and Appellant could relitigate any discovery claims, possibly in October 2019.  ***See*** N.T., 8/24/18, at 31.  Trial Counsel argued the delay should be chargeable to the Commonwealth for Pa.R.Crim.P. 600[14] purposes, but the Commonwealth objected.  ***Id.*** at 32.  Following a private discussion with Appellant, Trial Counsel advised the court, "[Appellant] has indicated . . . that he would like to proceed [to trial] on September 4th."  ***Id.*** at 33.  After further discussion, the trial court asked Appellant why he wished to go to trial as scheduled.  ***Id.*** at 40.  Appellant replied, "I just want to get it out of the way."  ***Id.***

---

[14] ***See*** Pa.R.Crim.P. 600(A)(2)(a) ("Trial . . . shall commence within 365 days from the date on which the complaint is filed.").

On appeal, Appellant acknowledges that at that pre-trial hearing, Trial Counsel discussed this issue with him, but insists "the record does not indicate what was said." Appellant's Brief at 24. Appellant claims Trial Counsel was ineffective for not agreeing to a continuance, so that he could review the large amount of information possessed by Deputy Fire Chief Baer. *Id.* at 27-28. Appellant recounts this file included an origin and cause report and an electrical engineering report, both important to the question of whether the fire was accidental or intentionally set. *Id.* at 27. We conclude no relief is due.

In denying relief, the PCRA court weighed the testimony presented at the PCRA hearing: Appellant stated that Trial Counsel told him, at the time of the pre-trial hearing, "[W]e'll go to trial next week without any real preparation." PCRA Ct. Op.at 26, *quoting* N.T., 8/9/21, at 106. Appellant further testified, "[I]f Judge Koury was going to offer [a continuance to] February, we should have taken" it. PCRA Ct. Op. at 26, *quoting* N.T., 8/9/21, at 106. Trial Counsel, however, testified that he spoke extensively with Appellant about: the importance of hiring an expert; "the pros and cons of . . . a continuance[;]" Appellant's financial resources; and Appellant's desire "to proceed 'expeditiously' and that 'there was no possible way he could come up with the funds to hire an expert because he had no income.'" PCRA Ct. Op. at 27, *citing* N.T., 8/24/21, at 27, 31. Trial Counsel stated it was Appellant's decision, following these discussions, to go to trial as scheduled. PCRA Ct.

Op. at 27, *citing* N.T., 8/24/21, at 32. The court found Trial Counsel credible and Appellant not credible. **See** PCRA Ct. Op. at 29, 41.

Appellant does not dispute this discussion by the PCRA court. The court weighed the competing testimony and found Trial Counsel credible; Appellant does not address why this Court should reject this credibility finding. **See** **Flor**, 259 A.3d at 910 (PCRA court's credibility determinations should be provided great deference by reviewing courts). Furthermore, the court's finding is supported by the record. On appeal, Appellant ignores his own on-the-record statement at the pre-trial hearing — that, when asked by the trial court his reasons for foregoing a proposed continuance, Appellant affirmed he "want[ed] to get it out of the way." **See** N.T., 8/24/18, at 40. Finally, we emphasize Appellant has not explained what any particular document in Deputy Chief Baer's files stated, nor why they would have affected the outcome of his trial. As Appellant has not established his underlying claim has arguable merit, nor that he was prejudiced, we agree with the PCRA court that no relief is due. **See Flor**, 259 A.3d at 902.

## X. Trial Counsel's Alleged Ineffectiveness for
## Not Presenting Evidence of Appellant's Financial Status

We address together Appellant's next two issues. First, he alleges the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not presenting evidence of his financial situation. Appellant's Brief at 31. He claims such evidence would have "completely undermine[d]

the Commonwealth's theory of motive[,]" which was that he started the fire to collect insurance proceeds. *Id.* at 31-32 (emphasis omitted). Appellant further claims the evidence would have corroborated his own trial testimony, that he was not suffering any financial troubles. *Id.* at 33. Appellant also points out his financial files were on his computer, which was in the Commonwealth's possession. *Id.* at 33-34.

Next, Appellant contends the PCRA court erred in finding he has consistently failed to present any particular evidence of his financial history. Appellant's Brief at 28. In support, he claims that at the PCRA hearing, the parties stipulated to the following: (1) in 2014, his net income as "around" $200,000; and (2) in 2015, his income was between $100,000 and $200,000. *Id.* at 29-30, *citing* N.T. PCRA, 8/24/21, at 4-8. No relief is due.

First, we disagree with Appellant's summation that the parties stipulated to the amount of his income in 2014 and 2015. In selectively quoting the PCRA hearing transcript, Appellant omits that what the parties stipulated to was what Appellant **would testify** were the amounts of his prior income. *See* Appellant's Brief at 29-30; N.T., 8/24/21, at 6, 8 (trial court asking, "Can we stipulate that [those 2014 and 2015 amounts] is what [Appellant's] testimony would be, based on his bank statements and his recollection[?,]" and the Commonwealth responding, "I have no way of refuting that, Judge. . . . I have never seen the bank records[,]" but ultimately agreeing to this stipulation).

Next, we observe, similarly to our above disposition, that on appeal Appellant has largely ignored the PCRA court's extensive discussion. The PCRA court found Appellant has "been unable to clearly define his claim," as he has yet to establish clearly just what his financial status was. PCRA Ct. Op. at 30. The court discussed the following: "throughout this litigation, [Appellant] has presented conflicting, confusing, and contradictory testimony regarding . . . his financial status." *Id.* at 29. Prior to trial, Appellant did not provide any documentation of his income or finances to Trial Counsel — only proof of debts and obligations — and to date, he still has not presented any tax returns, bank statements, or documents from eBay which would support his claim that he sold items for profit. *Id.* at 31-32, 34.

Furthermore, the PCRA court considered that at trial, Appellant was given the opportunity on cross-examination to discuss his employment through "amusement rides inspections, expert witness work and buying and selling all sorts of surplus[,]" and resultant income in 2014, 2015, and 2016. PCRA Ct. Op. at 36, *citing* N.T. Trial Vol. II, 9/5/18, at 180-82. However, Appellant gave "generalities and double talk about his financial status, without any detail [or] numbers[,]" and instead "remained steadfast to his strategy to obfuscate the status of his financial condition and his personal estate." PCRA Ct. Op. at 36-37.

Additionally, the PCRA court found Trial Counsel had a reasonable basis for various trial strategies. *See Chmiel*, 30 A.3d at 1127-28. For example,

while Appellant continues to refer to financial documents on his computer, seized by the law enforcement, Trial Counsel explained that Appellant had informed him those records would have exposed Appellant to other crimes. *Id.* at 33-34, *citing* N.T., 8/24/21, at 51-52. Due to this concern, Trial Counsel elected not to pursue recovery of the financial records from Appellant's computer. Additionally, Appellant had indicated his desire to testify about his pre-fire "purchases of 'high quality' appliances and [a] several thousand[s] dollars[-]playground for his son," which would ostensibly establish Appellant's "access to funds and having lots of money." PCRA Ct. Op. at 33, *citing* N.T., 8/24/21, at 17. However, Trial Counsel believed this "testimony would have been easily negated by" evidence that Appellant incurred a $25,000 tax lien in 2014 by the IRS. PCRA Ct. Op. at 33. The PCRA court found Trial Counsel's testimony was credible and his trial "strategy appeared both reasonable and professional, given the hand he was dealt." *Id.* at 37.

Again, Appellant does not address any of this detailed discussion by the PCRA court, aside from inaccurately claiming the parties stipulated to the amount of his income in 2014 and 2015. Additionally, even if the PCRA court had accepted Appellant's income figures as credible, the broad range of a $100,000 to $200,000 income, given for 2015, supports the court's finding that Appellant has consistently given "generalities and double talk about his financial status[.]" *See* N.T., 8/24/21, at 5; PCRA Ct. Op. at 37. Finally, Appellant does not explain why his entire financial situation should be

determined solely on the basis of income. We defer to the credibility findings of the PCRA court, and we agree with its conclusions. *See Flor*, 259 A.3d at 910. Accordingly, no relief is due.

## XI. Trial Counsel's Alleged Ineffectiveness for
## Not Presenting Pre-Fire Photos of House Renovations

Next, Appellant argues the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not introducing photos showing the state of the house before and during renovations. Appellant claims these photos would have supported his claim that the holes in the second and third floor ceilings were cut, more than one year before the fire, in order to remove piping. Appellant's Brief at 35-36. The photos would have thus also controverted the Commonwealth's theory that Appellant made the holes to accelerate a fire, with the hope that after the fire, the holes would not be visible or recognizable. *Id.* at 36-37. Appellant argues that in finding the photos would have been merely cumulative pursuant to *Commonwealth v. Small*, 189 A.3d 961 (Pa. Super. 2018), the PCRA court applied the wrong legal standard. *Id.* at 37. Appellant maintains the issue in *Small* was after-discovered evidence, whereas here, he was not arguing new evidence was uncovered post-trial, but rather that Trial Counsel was ineffective to present already-existing evidence. *Id.* We determine no relief is due.

The PCRA court set forth several reasons for denying relief. First, it considered that Appellant presented undated photos at the PCRA hearing, but

testified they were taken in June or July of 2014, approximately one year before the May 2015 fire. PCRA Ct. Op. at 38, *citing* N.T., 8/24/21, at 79. "[M]any of the photos depict plaster on the walls, artwork hanging on one wall[, while] other pictures seemingly depict rooms . . . in a dated or rundown condition, but do not seem to be gutted or otherwise disassembled." PCRA Ct. Op. at 38-39. As Appellant's own trial testimony was that he performed "significant renovations in 2015," the court credited the Commonwealth's argument that the PCRA hearing photographs were not relevant, because they did not depict the condition of the home at the time of the fire. *Id.* at 40. Instead, the court found, the photographs presented by the Commonwealth at trial, taken immediately after the fire, "depicted the extensive renovations undertaken by" Appellant. *Id.* Finally, the court found the photographs would have been merely cumulative of Appellant's trial testimony as to why the holes were cut. *Id.* at 39. We agree.

In **Flor** — a case that did not involve a claim of after-discovered evidence, our Supreme Court "decline[d] to deem counsel ineffective for not electing to call his own witness to establish an undisputed fact of which the jury was already informed by a number of witnesses." **Flor**, 259 A.3d at 925. We thus determine the PCRA court's denial of relief, on the ground any photographs would be merely cumulative of Appellant's trial testimony, was reasonable. **See id.** Additionally, Appellant does not address the court's reasoning, that his photographs, purportedly taken one year before the fire,

would not show the state of renovations at the time of the fire. Accordingly, Appellant has not established he was prejudiced, and no relief is due. *See Flor*, 259 A.3d at 902.

## XII. Trial Counsel's Alleged Ineffectiveness for
## Not Rebutting the Testimony of Detective Beebe

In his final issue, Appellant avers the PCRA court erred in rejecting his claim that Trial Counsel was ineffective for not rebutting testimony by Bethlehem Police Detective Christopher Beebe, which "was impermissible for a lay witness." Appellant's Brief at 39. Specifically, Appellant cites Detective Beebe's testimony that: (1) the gas can would have expanded if the cap were on during the fire; (2) the alarm system would have tripped if there were a power surge or other electrical problem; (3) "he did not see kinks, melting or burning in wire or cord box [sic]" and thus the fire was likely not caused by an electrical issue; and (4) Appellant was agitated and had asked the detective why he "was trying to accuse him of setting his house on fire[.]" *Id.* at 39. Appellant complains that Trial Counsel failed to remedy or explain any of these statements during his — Appellant's — own testimony. *Id.* Appellant concedes that Detective Beebe's testimony, when "[c]onsidered in isolation . . . may appear harmless[,]" but points out the PCRA court itself "seemingly concedes that counsel's stewardship was somewhat problematic[.]" *Id.* at 40. Nevertheless, Appellant concludes the PCRA court erred in concluding he was not harmed by this testimony. *Id.* We disagree.

The PCRA court found Detective Beebe's testimony was merely cumulative of, and consistent with, the opinions and findings of the Commonwealth's three experts. PCRA Ct. Op. at 43. The court thus reasoned that Appellant was not prejudiced. Pursuant to **Flor**, we agree. **See Chmiel**, 30 A.3d at 1127-28; **Flor**, 259 A.3d at 925.

Furthermore, Appellant ignores additional reasoning by the PCRA court. First, the court observed this ineffectiveness claim "apparently arises from, or is primarily based upon, the criticisms of Detective Beebe contained in Mr. Lentini's report." **See** PCRA Ct. Op. at 43. However, Lentini's report was not created until the PCRA proceedings, and thus not available to Trial Counsel at the time of trial. **Id.** Additionally, the PCRA court found Beebe's observations were "at best . . . tangential" to the issues of the origin of the fire and whether the fire was intentionally set. **Id.** at 44. Appellant does not present any argument why these findings are in error. **See Flor**, 259 A.3d at 910. We conclude no relief is due.

### XIII. Conclusion

In sum, we conclude Appellant's first two issues are waived, and that the PCRA court properly denied relief on his multiple claims of Trial Counsel's ineffective assistance. We therefore affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/24/2023